1  Daniel M. Hattis (SBN 232141)
   Email: dan@hattislaw.com
2  HATTIS LUKACS & CORRINGTON
   11711 SE 8th Street, Suite 120
3  Bellevue, WA 98005
   Telephone: (425) 233-8650
4  Facsimile: (425) 412-7171

5  *Attorneys for Plaintiff*
   *and the Proposed Class*
6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 JOANNE CATTANI,                       Case No. **'25CV3581 BAS KSC**

12 for herself,
   as a private attorney general,        **CLASS ACTION**
13 and on behalf of all others similarly situated,
                                         **COMPLAINT FOR:**
14
                                         **(1) VIOLATION OF CAL. CIVIL CODE**
15                    Plaintiff,             **§ 1750 *et seq.***

16 v.                                    **(2) VIOLATION OF CAL. BUSINESS &**
                                             **PROFESSIONS CODE § 17500 *et seq.***
17
                                         **(3) VIOLATION OF CAL. BUSINESS &**
18 ELITE ERA LLC and                        **PROFESSIONS CODE § 17200 *et seq.***
   SEAL SKIN COVER LLC,
19                                          **JURY TRIAL DEMANDED**

20                    Defendants.

21

22

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

Plaintiff Joanne Cattani, individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and the investigation of her counsel, against Defendants ELITE ERA LLC and Seal Skin Cover LLC (collectively, "Seal Skin" or "Defendants"):

## I.    **INTRODUCTION AND SUMMARY**

1.    Seal Skin operates the sealskincovers.com website where it advertises, markets, and sells Seal Skin-branded vehicle covers, e.g., car covers, boat covers, and motorbike covers (the "Products")[1] directly to consumers throughout California and the United States. All or nearly all of the Products offered on Seal Skin's website are manufactured by Seal Skin.

2.    For years, Seal Skin has engaged in a massive and consistent false discount advertising scheme on its website. Specifically, Seal Skin advertises perpetual discounts and percentage-off savings on virtually all of its Products. Seal Skin's discounts typically range from 40% to 50% off of Seal Skin's advertised strikethrough reference prices for the Products. Seal Skin represents these reference prices to be the regular and normal prices of the Products, from which the advertised discounts are calculated.

3.    Seal Skin's advertised discounts and reference prices for its Products are false because Seal Skin advertises perpetual discounts on the Products and never or almost never offers the Products at their advertised reference price.

4.    Seal Skin also advertises false limited-time discounts for its products to induce consumers to purchase the products immediately before they supposedly return to the (fictitious) reference price.

5.    Seal Skin's false discount advertising is so pervasive across all of its products and all of its advertising that it is apparent that the heart of Seal Skin's marketing plan is to deceive the public.

6.    Seal Skin's intent is to trick consumers into believing that its Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale

---

[1] Seal Skin also sells non-vehicle covers, such as covers for patio furniture and grills. These non-vehicle covers are not included in the definition of "Products".

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

price represents a special bargain. Seal Skin perpetrates this illegal scheme in order to induce consumers to purchase its Products and to charge more for its Products than it otherwise could have charged.

7.      Seal Skin's false discount advertising harms consumers like Plaintiff by causing them to pay more than they otherwise would have paid and to buy Products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

8.      Customers do not enjoy the actual discounts Seal Skin promises them, and the Products are not in fact worth the amount that Seal Skin represents to them. Seal Skin's deceptive pricing scheme also artificially increases the demand for its Products and causes all customers, including Plaintiff and Class members, to pay price premiums to Seal Skin.

9.      Seal Skin's false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*, in numerous ways, as detailed in this Complaint.

10.     Plaintiff brings this lawsuit individually and on behalf of a class of California consumers who purchased from the Seal Skin website one or more Products advertised with a discount. Plaintiff seeks restitution and/or disgorgement for herself and for each of the Class members. Additionally, Plaintiff, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining Seal Skin from engaging in the unlawful false advertising scheme alleged herein.

## II.    THE PARTIES

11.     Plaintiff Joanne Cattani is a citizen and resident of the city of La Mesa, in San Diego County, California, and is an unsophisticated consumer party.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

12.     Defendant ELITE ERA LLC is a limited liability company with its principal place of business at 281 Fields Lane # 1, Brewster, NY 10509. In the LLC Registration form that ELITE ERA LLC filed with the State of California on June 17, 2025, ELITE ERA LLC stated that its "California Alternate Name" was Seal Skin Cover LLC.

13.     Defendant Seal Skin Cover LLC is a limited liability company with its principal place of business at 281 Fields Lane # 1, Brewster, NY 10509. Seal Skin Cover LLC owns and operates the Seal Skin Covers website, sealskincovers.com.

14.     In this Complaint, ELITE ERA LLC and Seal Skin Cover LLC are collectively referred to as "Seal Skin" or "Defendants."[2]

### III.    JURISDICTION AND VENUE

15.     **Subject Matter Jurisdiction.** The Court has subject matter jurisdiction over this civil action in that Plaintiffs bring claims exclusively under California law, including the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; the False Advertising Law, California Business & Professions Code § 17500 *et seq.*; and the Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*

16.     **Personal Jurisdiction.** This Court has personal jurisdiction over each Defendant because, without limitation: (1) each Defendant is authorized to do business and regularly conducts business in California; (2) the claims alleged herein took place in California; and/or (3) each Defendant has committed tortious acts within California (as alleged, without limitation, throughout this Complaint). Each Defendant has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

17.     **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff is a California citizen who resides in this District. Plaintiff also made her purchase in this District.

---

[2] In the event that discovery reveals that the Seal Skin brand and assets have a different ownership or management structure, Plaintiff will seek leave to file an amended pleading that conforms to proof.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

18.     Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in San Diego County. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached as **Exhibit A.**

## IV.    SEAL SKIN'S FALSE DISCOUNT ADVERTISING SCHEME

19.     Seal Skin owns and operates the website sealskincovers.com, where it advertises, markets, and sells Seal Skin-branded vehicle covers, e.g., car covers, boat covers, motorbike covers, etc., (the "Products")[3] directly to consumers throughout California and the United States. All or nearly all of the Products offered on Seal Skin's website are manufactured by Seal Skin.

20.     For years, Seal Skin has engaged in a massive and consistent false discount advertising scheme on its website. Specifically, Seal Skin advertised, and continues to advertise, perpetual discounts on virtually all of its Products. Seal Skin's discounts typically range from 40% to 50% off. These discounts are taken from Seal Skin's advertised strikethrough reference prices for its products. Seal Skin represents these reference prices to be the regular and normal prices of the Products. However, unbeknownst to its customers, Seal Skin's discounts are never-ending, and the Products are never offered at the supposed regular price. Seal Skin perpetrates this illegal scheme in order to induce consumers to purchase its Products and to increase the amount it can charge for its Products.

21.     Seal Skin aggressively advertises the discounts on its website in several ways.

22.     On its product list pages, Seal Skin advertises the discounts by advertising a strikethrough regular price (e.g., ~~$369.99~~) next to a lower discounted price in bold orange text (e.g., **$179.99**). See the screenshots below.

---

[3] Seal Skin also sells non-vehicle covers, such as covers for patio furniture and grills. These non-vehicle covers are not included in the definition of "Products".

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

### Product List Page Showing Seal Skin Car Covers — 7/30/2025



### Product List Page Showing Seal Skin Boat Covers — 7/31/2025



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

23.     On its individual product pages, Seal Skin advertises the discounts by advertising a strikethrough regular price in bold red text and a percentage-off discount (e.g., "**-51% $369.99**") next to a lower discounted price. See the screenshots below.

**Product Page of Seal Skin Supreme Car Cover
7/30/2025**



**Product Page of Seal Skin Supreme Boat Cover
7/30/2025**



CLASS ACTION COMPLAINT

- 7 -

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

24.     Seal Skin intends that consumers interpret and understand the strikethrough reference prices to stand for Seal Skin's regular selling prices for those Products. Seal Skin intends that consumers understand the reference price to reflect Seal Skin's regular former price for the Product. Seal Skin intends that consumers understand the reference price to represent the value of the Product. Seal Skin intends that consumers understand and believe that by purchasing the Product that day, consumers will enjoy an unusual and special bargain—specifically, that consumers will enjoy the advertised dollars-off and percentage-off savings from the Product's regular price.

25.     Plaintiffs' counsel's investigation has revealed that Seal Skin advertises perpetual discounts on virtually <u>all</u> of its Products.

26.     Additionally, at the top of every list page and product page for the Products, there is a large banner advertising a "50% OFF SALE." This banner has been at the top of these pages every single day since at least August 2020, with only the style of the banner slightly changing over the years. See screenshots below.

**Top of Product List Page for Car Covers – 8/10/2020**



**Top of Product List Page for Car Covers – 9/20/2024**



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

27.     In fact, the "50% Off" sale language is so permanent that Seal Skin hard-coded it into the title meta tags of the car covers webpages: "content='Car Covers for Sale – 50% Off, Lifetime Warranty." That way, Seal Skin ensures that the "50% Off" language will be permanently and prominently displayed in search results on Google and on social media platforms.  For example, below is the Google search result listing for the Seal Skin car covers page, parroting the hard-coded title meta tag "Car Covers for Sale – 50% Off, Lifetime Warranty."

**Google Search Listing for Seal Skin Car Covers – 7/30/2025**



Sealskin Covers
https://sealskincovers.com › pages › car-covers     ⋮

**Car Covers for Sale – 50% Off, Lifetime Warranty**

Seal Skin Car Covers offers **great car covers for sale** at ✓ affordable prices and a ✓ lifetime warranty. ✓ Come join the 500K+ customers who've left us ...

Ford Car Covers     BMW Car Covers     Cadillac Car Covers

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

28. Plaintiff's counsel's investigation has revealed that Seal Skin advertises perpetual discounts on all of its Products. For example, below is a screenshot of a Seal Skin Supreme Car Cover for a McLaren taken on July 23, 2025, with an advertised strikethrough reference price of ~~$369.99~~, purportedly on sale for **$179.99**.

### Seal Skin Website – 7/23/2025



29. However, these sale advertisements were false. Based on Plaintiff's counsel's investigation, the $369.99 advertised reference price was <u>not</u> Seal Skin's regular selling price for the car cover. In fact, Seal Skin <u>never</u> previously sold the car cover at the advertised reference price of $369.99 (and certainly not within the last 90 days). Seal Skin <u>always</u> offered and sold the car cover at a much lower price, typically between $169.99 and $179.99. (Based on Plaintiff's counsel's investigation, Seal Skin has offered its Seal Skin Supreme Car Covers for $169.99 every single day since October 2022, up through May 8, 2025. On May 9, 2025, Seal Skin increased the selling price of its Seal Skin Supreme Car Covers to $179.99, which is its current selling price.)

30. Seal Skin's false discount advertising of the car cover described above is typical and representative of the false discount advertising Seal Skin perpetrates on its website for all of its "discounted" Products.

CLASS ACTION COMPLAINT

- 10 -

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## V.   PLAINTIFF'S ALLEGATIONS ARE BASED ON HER COUNSEL'S INVESTIGATION INTO SEAL SKIN'S PRACTICES

31.     Plaintiff's allegations concerning Seal Skin's false discount advertising scheme are based on Plaintiff's counsel's comprehensive investigation of the Seal Skin website using counsel's proprietary web scraping software, and also on counsel's investigation of archived Seal Skin webpages on the Internet Archive's Wayback Machine (available at www.archive.org).[4]

32.     Plaintiff's counsel has been monitoring and scraping the Seal Skin website on an automated daily basis with a proprietary software program since June 21, 2025. Counsel's investigation and data shows that Seal Skin advertises perpetual discounts for nearly all of its Products, typically ranging from 40% to 55% off every Product.

33.     The stated percentage-off discounts are always false, and Seal Skin's list prices to which the discounts are applied are false and inflated. In fact, for every single Product that Seal Skin advertises with a discount, Seal Skin has never—not even for a single day—offered the Product at the list price without a discount.

34.     Additionally, counsel examined over one hundred archived screenshots of the Seal Skin website on the Internet Archive's Wayback Machine going back to August 2020. In every single screenshot that Plaintiff's counsel examined, every Product shown was displayed with a discount. Based on this investigation, counsel determined that Seal Skin's false discount advertising scheme has been going since at least August 2020.

35.     Based on information and belief, Seal Skin has been engaging in false discount advertising since long before August 2020. Unfortunately, the Wayback Machine has virtually no screenshots of the Seal Skin website for a two-year period prior to August 2020. However, the available screenshots of the Seal Skin website in 2017 and 2018 show the same "50% OFF SALE" banner that Seal Skin has continuously advertised on its website for the last four years.

---

[4] The Internet Archive is an internet library that archives webpages. For more information, see https://archive.org/about/.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

36.     Plaintiff's investigation into Seal Skin's false discount advertising scheme is as thorough as possible under the circumstances. Thus, Plaintiff's allegations which are based on information and belief are permissible. "Without an opportunity to conduct any discovery, [Plaintiff] cannot reasonably be expected to have detailed personal knowledge of [Seal Skin's] internal pricing policies or procedures." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017). "Because [Plaintiff] need not specifically plead facts to which she cannot 'reasonably be expected to have access,' her allegations regarding the fictitious nature of the [reference] prices may properly be based on personal information and belief at [the pleading] stage of the litigation." *Id.* Here, Plaintiff's allegations are based not only on information and belief, but also on a comprehensive investigation of Seal Skin's historical website advertising which was as thorough as possible under the circumstances.

## VI.     SEAL SKIN'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

37.     Seal Skin perpetrates this false discount advertising scheme because it works—lying about discounts increases demand and increases Seal Skin's revenues and profits.

38.     Indeed, decades of academic research has established that the use of reference prices and discount advertising like that utilized by Seal Skin materially impacts consumers' behavior and induces them to purchase the "discounted" Products. A reference price (e.g., the strikethrough price advertised by Seal Skin from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[5]

---

[5] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*,

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

39.     When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Seal Skin, advertise their Products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

40.     As a direct and proximate result of Seal Skin's false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

41.     First, Plaintiff and Class members were harmed because they would not have purchased the Products at the prices they paid had they known that the discounts were fake and that the Products had not in fact been regularly offered at the higher reference price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

42.     Consumers who are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot

---

100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

---

CLASS ACTION COMPLAINT

- 13 -

Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

43.    Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts Seal Skin represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Seal Skin represented to them; the Products did not regularly sell for, and did not have a market value of, the fictitious reference price advertised by Seal Skin.

44.    Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Seal Skin's deceptive pricing scheme. Seal Skin's false discount advertising scheme artificially increases consumer demand for Seal Skin's Products, which shifts the demand curve and allows Seal Skin to charge more for its Products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations.

45.    Seal Skin's false advertising scheme enabled Seal Skin to charge everyone more for all of its Products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Seal Skin would have had to charge less for its Products in order to enjoy the same level of demand.

46.    In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar Products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

47.     Federal and state courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their Products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

48.     The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

49.     California law prohibits false reference pricing practices such as those perpetrated by Seal Skin.

50.     California's Consumers Legal Remedies Act (CLRA) prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

51.     California's False Advertising Law (FAL) prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely indicating that a product is on sale, when it actually is not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding [the advertisement] or unless the date when the alleged former

CLASS ACTION COMPLAINT

- 15 -

price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

52.    Finally, California's Unfair Competition Law broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

53.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former price is false when it is "an artificial, inflated price [that] was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

54.    A UCL claim may be predicated on a violation of the Federal Trade Commission's regulations under the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

55.    As alleged in detail above, Seal Skin's advertised reference prices and discounts violate California law because, based on the investigation of Plaintiff's counsel, Seal Skin's advertised reference prices are inflated and fictitious, and Seal Skin's advertised percentage-off discounts are false. Seal Skin advertises perpetual discounts on its Products, and thus rarely, if ever, offers its Products at their advertised reference price.

56.    Additionally, because Seal Skin advertises perpetual discounts of between 40% to 50% off, its advertised former prices were not the prevailing market price in the three months immediately preceding the advertisement. This is true for the Products sold exclusively on the Seal Skin website because Seal Skin's own actual selling prices determine the prevailing market price. *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019). This is also true for any Products that were also sold elsewhere "because in competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price." *Id.* at 416–17.

57.    Because Seal Skin's advertised former prices are consistently significantly higher than its actual former prices for the Products, the only reasonable inference is that those advertised prices were not the prevailing market prices during the requisite three-month

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

period. *See id.* at 417; *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *5 (N.D. Cal. Mar. 28, 2024) ("[Plaintiff] need not identify the prices charged by other retailers to plausibly allege that the strikethrough prices were not the prevailing market prices. Instead, the Court can reasonably infer on a motion to dismiss that [Defendant] 'would not continually sell Products for prices' for 'less than the market rates at which those Products are offered elsewhere.'"); *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *5 (N.D. Cal. Jan. 5, 2024); *Lawyer v. Homary International Limited*, 2025 WL 1571856, at *5 (N.D. Cal. June 2, 2025); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016).

58.    The false reference price and false discount representations by Seal Skin were material to the decisions of consumers to purchase each Product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these Products, and consumers purchased these Products on the basis of these representations in order to enjoy the purported discounts.

59.    Seal Skin's false discount advertising is so pervasive across all of its Products that it is apparent that the heart of Seal Skin's marketing plan is to deceive the public.

60.    Seal Skin's intent is to deceive consumers into believing that its Products are worth, and have a market value equal to, the inflated reference price (the strikethrough price), and that the lower advertised "sale" price represents a special bargain.

61.    The false or misleading nature of Seal Skin's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

62.    As a direct and proximate result of Seal Skin's acts and omissions, all consumers who have purchased a Product from Seal Skin that was advertised with a reference price or purported discount have been harmed and have lost money or property.

63.    Seal Skin continues to advertise false reference prices and false discounts to this day. There is no reason to believe that Seal Skin will voluntarily and permanently cease its

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

unlawful practices. Moreover, in the unlikely event that Seal Skin were to cease its unlawful practices, Seal Skin can and is likely to re-commence these unlawful practices.

64.    In acting toward consumers and the general public in the manner alleged herein, Seal Skin acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII.    **PLAINTIFF'S FACTUAL ALLEGATIONS**

65.    Plaintiff Joanne Cattani is, and at all relevant times has been, a citizen and resident of the city of La Mesa, in San Diego County, California.

66.    Ms. Cattani is a victim of Seal Skin's false discount advertising scheme.

67.    As detailed above, Seal Skin's false discounting practices have been ongoing since at least August 2020. During this time, Ms. Cattani purchased at least one Product from Seal Skin's website which was advertised with a false reference price and a false discount.

68.    On October 3, 2024, Ms. Cattani visited the Seal Skin website to shop for a car cover. While browsing the Seal Skin website, Ms. Cattani viewed pricing and discount representations similar to those described and presented in detail above. All of the Products that she viewed were advertised as being discounted from a reference price. Every Product that Ms. Cattani viewed had a strikethrough reference price for the Product, alongside a lower "sale" price. Seal Skin also advertised on the webpages that every item was at a specified percentage-off savings.

69.    The Products Ms. Cattani viewed on the Seal Skin website included the Seal Skin Supreme Car Covers (the "Car Cover"). Ms. Cattani viewed webpages advertising that the Car Cover was on "sale" for $169.99 from a much higher regular price of $369.99, which was represented with a strikethrough. Seal Skin also advertised that the Car Cover was 54% off its regular price of $369.99.

70.    Based on Seal Skin's representations, Ms. Cattani believed she needed to act fast and purchase the Car Cover now to take advantage of the special sale before the Car Cover returned to its normal full price.

---

CLASS ACTION COMPLAINT

- 18 -

71.     Relying on these representations of receiving a special and significant discount for the chairs, Ms. Cattani completed the checkout process and purchased the Car Cover.

72.     Relying on Seal Skin's representations, Ms. Cattani reasonably believed that the Car Cover was normally offered and sold by Seal Skin on its website at the higher advertised strikethrough reference price of $369.99. Ms. Cattani reasonably believed that the Car Cover was worth, and had a value of, the higher stated reference price of $369.99. Ms. Cattani reasonably believed that the advertised "sale" price of $169.99 represented a special bargain, where Seal Skin was temporarily offering the Car Cover at a significant discount from its regular and normal selling price.

73.     However, Seal Skin's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Cattani, Seal Skin had never offered the Car Cover at the $369.99 purported regular price—just as Seal Skin had never offered any of the other Products on its website at their advertised reference prices. For example, Ms. Cattani's counsel's investigation documented that Seal Skin had perpetually advertised the Car Cover with the exact same $369.99 strikethrough reference price and $169.99 selling price since October 1, 2022, through the date of her purchase two years later on October 3, 2024. (Prior to October 1, 2022, Seal Skin advertised the Car Cover with a $349.99 strikethrough reference price and a $149.99 selling price. Seal Skin perpetually advertised the same $349.99 strikethrough reference price and $149.99 selling price from at least August 2020 to September 2022.)

74.     The advertised $369.99 reference price was not Seal Skin's regular offering price for the Car Cover and did not reflect the market value of the Car Cover. Ms. Cattani did not receive the advertised and promised savings from the Car Cover's true regular price.

75.     Seal Skin's advertised reference price and discount for the Car Cover were material misrepresentations and inducements to Ms. Cattani's purchase.

76.     Ms. Cattani reasonably relied on Seal Skin's material misrepresentations regarding the advertised reference price and discount for the Car Cover. If Ms. Cattani had known the truth, she would not have purchased the Car Cover at the price she paid.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

77.    As a direct and proximate result of Seal Skin's acts and omissions, Ms. Cattani was harmed, suffered an injury-in-fact, and lost money or property.

78.    When Ms. Cattani shopped on Seal Skin's website, she had no suspicion that Seal Skin's advertised reference prices and discounts were false. Seal Skin gave Ms. Cattani no reason to be suspicious. Ms. Cattani first learned of Seal Skin's false discount advertising scheme in April 2025 when her attorneys told her about Seal Skin's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Cattani did not know or suspect that Seal Skin was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

79.    Ms. Cattani has a legal right to rely now, and in the future, on the truthfulness and accuracy of Seal Skin's representations regarding the advertised reference prices and discounts for its Products.

80.    Ms. Cattani faces an imminent threat of future harm. Ms. Cattani would purchase Products from Seal Skin's website again in the future if she could have confidence regarding the truth of Seal Skin's price and discount representations. But without an injunction, Ms. Cattani has no way of knowing which, if any, of Seal Skin's reference prices, discounts, and sales are true.

81.    Ms. Cattani will be harmed if, in the future, she is left to guess as to whether Seal Skin is providing a legitimate sale or not, and whether its Products are actually worth the amount that Seal Skin is representing.

82.    If Ms. Cattani were to purchase again from Seal Skin without Seal Skin having changed its unlawful and deceptive conduct alleged herein, Ms. Cattani would be harmed on an ongoing basis and/or would be harmed once or more in the future.

83.    The deceptive practices and policies alleged herein, and experienced directly by Ms. Cattani, are not limited to any single Product or group of Products. Rather, Seal Skin's deceptive advertising and sales practices were, and continue to be, systematic and pervasive across all of Seal Skin's Products.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**CLASS ALLEGATIONS**

84.    Plaintiff brings this lawsuit on behalf of herself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

85.    **California Class:** Plaintiff seeks to represent the following California Class: **All persons who, while in California, within the applicable limitations period, purchased from the Seal Skin website, sealskincovers.com, one or more Products[6] advertised at a discount.**

86.    Specifically excluded from the Class are Seal Skin and any entities in which Seal Skin has a controlling interest, Seal Skin's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

87.    **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Seal Skin first engaged in its unlawful false discounting practices. (Based on counsel's investigation, Seal Skin's false discount advertising practices have been ongoing since at least August 2020, and likely began much earlier. However, without discovery, Plaintiff cannot determine the earliest date Seal Skin first began advertising false discounts.)

88.    The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiff and the members of the Class did not know, and could not have reasonably known, about Seal Skin's unlawful conduct.

89.    When Plaintiff shopped on Seal Skin's website, she had no suspicion that Seal Skin's advertised reference prices and discounts were false. Seal Skin gave Plaintiff no reason to be suspicious. Plaintiff first learned of Seal Skin's false discount advertising scheme in April 2025 when her attorneys told her about Seal Skin's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Plaintiff did not know or suspect—and had no reason

---

[6] "Products" is defined as all vehicle covers sold on Seal Skin's website (e.g., car covers, boat covers, motorbike covers, etc.). Seal Skin also sells non-vehicle covers, such as covers for patio furniture and grills. These non-vehicle covers are not included in the definition of "Products".

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

to suspect—that Seal Skin was engaging in a false discount advertising scheme or that she had been a victim of the scheme. *See Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (holding that the plaintiff's claims did not begin to accrue under the discovery rule until the date his lawyers informed him that he was likely a victim of the defendant's false discount advertising scheme).

90.    Likewise, Class members would not have known or suspected that Seal Skin was engaging in this deceptive pricing scheme.

91.    Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would have believed that Seal Skin's pricing and discount representations were true.

92.    Reasonable consumers would have believed that Seal Skin's strikethrough reference prices: (1) represented Seal Skin's regular and normal prices that consumers had to pay for the Products; (2) represented Seal Skin's recent former prices of the Products (that is, the prices at which the Products were regularly offered for sale before the purportedly limited-time offer went into effect); and (3) represented Seal Skin's prices that consumers would have to pay for the Products when the sale ended.

93.    Reasonable consumers would have believed that Seal Skin's advertised discounts represented a reduction from the regular and recent former prices of the Products in the amounts advertised.

94.    Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Seal Skin's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover—especially regarding Products that are purchased infrequently such as vehicle covers.

95.    "The only way for a person to know that [a retailer's] advertised discounts were false is for the person to know [the retailer's] true historical selling prices for the Products he or she purchased." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *3 (W.D. Wash. Mar. 12, 2025). Consumers who shopped on Seal Skin's website would have had no way to know, with the exercise of reasonable diligence, the true daily price histories and

past selling prices for the Products they viewed and purchased. Consumers would have had no way to know, with the exercise of reasonable diligence, that Seal Skin's regular prices (i.e., the advertised strikethrough reference prices) were fictitious and inflated and that the advertised percentage-off savings were false.

96.     Plaintiff's counsel only found evidence for Seal Skin's deceptive pricing scheme by conducting an extensive investigation that no reasonable person would conduct.

97.     **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Seal Skin's records and can be easily ascertained from those records.

98.     **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.     Whether the alleged conduct of Seal Skin violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

b.     Whether the alleged conduct of Seal Skin violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

c.     Whether the alleged conduct of Seal Skin violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

d.     Whether the alleged conduct of Seal Skin violates 16 C.F.R § 233.1 *et seq.*;

e.     Whether Plaintiff and the Class have suffered injury and have lost money or property as a result of Seal Skin's unlawful conduct; and

f.     Whether Seal Skin should be enjoined from engaging in the unlawful conduct alleged herein.

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

99.    **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Seal Skin's standard practices and schemes, bring the same claims, and face the same potential defenses.

100.    **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

101.    **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Seal Skin's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

102.    By its conduct and omissions alleged herein, Seal Skin has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

103.    Seal Skin is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against Seal Skin in this Complaint arises from and is limited to statements or conduct by Seal Skin that consist of representations of fact about Seal Skin's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Seal Skin's goods; or the statements are or were made in the course of delivering Seal Skin's goods. Each cause of action brought by Plaintiff against Seal Skin in this Complaint arises from and is limited to statements

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

or conduct by Seal Skin for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### COUNT I
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq*.**

104.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

105.    Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

106.    Seal Skin's Products are "goods" as defined by California Civil Code § 1761(a).

107.    Each Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

108.    Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

109.    Plaintiff and Class members purchased Seal Skin's Products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

110.    Plaintiff and Class members' purchases from Seal Skin each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

111.    Venue is proper under Cal. Civil Code § 1780(d) because San Diego County, which is located in this District, is the county in which the transaction or any substantial portion thereof occurred, and it is a county in which Seal Skin is doing business. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

112.    The unlawful methods, acts, or practices alleged herein to have been undertaken by Seal Skin were all committed intentionally and knowingly. The unlawful methods, acts, or practices alleged herein to have been undertaken by Seal Skin did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

113.    Seal Skin's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a.    Seal Skin represented that its Products had characteristics that they did not have. (Cal. Civ. Code § 1770(a)(5));

b.    Seal Skin advertised its Products with an intent not to sell them as advertised. (Cal. Civ. Code § 1770(a)(9));

c.    Seal Skin made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d.    Seal Skin misrepresented that its Products were supplied in accordance with previous representations when they were not. (Cal. Civ. Code § 1770(a)(16)).

114.    With respect to any omissions, Seal Skin at all relevant times had a duty to disclose the information in question because, inter alia: (a) Seal Skin had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Seal Skin concealed material information from Plaintiff and Class members; and (c) Seal Skin made partial representations which were false and misleading absent the omitted information.

115.    Seal Skin intentionally deceived Plaintiff and the Class, and continues to deceive the public, by advertising false discounts and false reference prices.

116.    Seal Skin's misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

117.    Seal Skin's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

118.    As a direct, substantial, and/or proximate result of Seal Skin's unlawful conduct, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

119.    Plaintiff and Class members reasonably relied on Seal Skin's material misrepresentations, and would not have purchased Seal Skin's Products at the prices that they paid had they known the truth.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

120.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts that Seal Skin represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Seal Skin represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Seal Skin.

121.    By its conduct and omissions alleged herein, Seal Skin caused the demand for its Products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Seal Skin. Put differently, as a result of its misrepresentations, Seal Skin has been able to charge a price premium for its Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Seal Skin would have had to charge less for its Products in order to enjoy the same level of demand.

122.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CLRA to protect the general public from Seal Skin's false advertisements, misrepresentations, and omissions.

123.    Seal Skin's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Seal Skin absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Seal Skin from committing the unlawful practices alleged herein.

124.    The balance of the equities favors the entry of permanent public injunctive relief against Seal Skin. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Seal Skin's ongoing false advertising absent the entry of permanent public injunctive relief against Seal Skin.

125.    Plaintiff lacks an adequate remedy at law to prevent Seal Skin from engaging in the unlawful practices alleged herein. Plaintiff would purchase Products from Seal Skin again if she could have confidence regarding the truth of Seal Skin's prices and the value of its Products. Plaintiff will be harmed if, in the future, she is left to guess as to whether Seal Skin is

1  providing a legitimate sale or not, and whether Seal Skin's Products are actually worth the

2  amount that Seal Skin is representing.

3      126.    Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v.*

4  *Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are

5  inadequate for future harm for the following reasons, without limitation: First, damages will not

6  prevent Seal Skin from engaging in its unlawful conduct. Second, damages for future harm

7  cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible

8  to know what Products Plaintiff may want or need in the future. Third, injunctive relief is

9  necessary (and monetary damages do not provide a plain, adequate and complete remedy)

10  because, without forward-looking injunctive relief enjoining the unlawful practices, the courts

11  may be flooded with future lawsuits by Class members, Plaintiff, and the general public for

12  future violations of the law by Seal Skin.

13      127.    In accordance with California Civil Code § 1782(a), Plaintiff, through counsel,

14  will be serving Seal Skin with notice of its CLRA violations by certified mail, return receipt

15  requested, on December 15, 2025. If Seal Skin fails to provide appropriate relief for its CLRA

16  violations within 30 days of its receipt of Plaintiff's notice letter, Plaintiff will amend this

17  complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§

18  1780 and 1782(b), along with attorneys' fees and costs.

19                              **COUNT II**
                **Violation of California's False Advertising Law ("FAL")**
20            **California Business & Professions Code § 17500** ***et seq.***

21      128.    Plaintiff realleges and incorporates by reference all paragraphs previously

22  alleged herein.

23      129.    Plaintiff brings this claim in her individual capacity, in her capacity as a private

24  attorney general seeking the imposition of public injunctive relief, and as a representative of the

25  Class.

26

27

28

---

CLASS ACTION COMPLAINT                      - 28 -

130.     Seal Skin has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

131.     Seal Skin has advertised discounts and reference prices that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See, e.g.*, *Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (Feb. 5, 2014, Cal. Sup. Ct.) (same).

132.     Additionally, Seal Skin has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do Seal Skin's former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

133.     With respect to omissions, Seal Skin at all relevant times had a duty to disclose the information in question because, inter alia: (a) Seal Skin had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Seal Skin concealed material information from Plaintiff and Class members; and (c) Seal Skin made partial representations which were false or misleading absent the omitted information.

134.     Seal Skin committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Seal Skin, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

135.     Seal Skin's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

136.     Seal Skin's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

137.    As a direct and proximate result of Seal Skin's violations of the FAL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

138.    Plaintiff and Class members reasonably relied on Seal Skin's material misrepresentations, and would not have purchased Seal Skin's Products at the prices that they paid had they known the truth.

139.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts that Seal Skin represented and promised to them. Plaintiff and Class members did not receive Products that were worth the inflated amount that Seal Skin represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious and invented reference price advertised by Seal Skin.

140.    By its conduct and omissions alleged herein, Seal Skin caused the demand for its Products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Seal Skin. Put differently, as a result of its misrepresentations, Seal Skin has been able to charge a price premium for its Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Seal Skin would have had to charge less for its Products in order to enjoy the same level of demand.

141.    By its conduct and omissions alleged herein, Seal Skin received more money from Plaintiff and Class members than it should have received. Seal Skin should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

142.    Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

143.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from Seal Skin's false advertisements, misrepresentations, and omissions.

144.    Seal Skin's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Seal Skin absent a permanent public injunction. Accordingly,

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Plaintiff seeks an order enjoining Seal Skin from committing the unlawful practices alleged herein.

145.    The balance of the equities favors the entry of permanent public injunctive relief against Seal Skin. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Seal Skin's ongoing false advertising absent the entry of permanent public injunctive relief against Seal Skin.

146.    Plaintiff lacks an adequate remedy at law to prevent Seal Skin from engaging in the unlawful practices alleged herein, as stated in Count I above.

147.    Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.

## COUNT III
### Violation of California's Unfair Competition Law ("UCL")
### California Business & Professions Code § 17200 *et seq.*

148.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

149.    Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

150.    California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

151.    **"Unlawful" Prong.** Seal Skin has violated the UCL by engaging in the following unlawful business acts and practices:

        a.    Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

        b.    Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL);

        c.    Engaging in deceit in violation of Cal Civ Code §§ 1709–1710; and

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1         d.     Employing deceptive discount price advertisements as identified by

2  16 C.F.R § 233.1 *et seq.*

3       152.   **"Unfair" and "Fraudulent" Prongs.** Seal Skin has violated the UCL by

4  engaging in the following unfair and/or fraudulent business acts and practices:

5         a.     Advertising false reference prices; and

6         b.     Advertising false discounts, including percentage-off discounts.

7       153.   With respect to omissions, Seal Skin at all relevant times had a duty to disclose

8  the information in question because, inter alia: (a) Seal Skin had exclusive knowledge of

9  material information that was not known to Plaintiff and Class members; (b) Seal Skin

10  concealed material information from Plaintiff and Class members; and (c) Seal Skin made

11  partial representations which were false and misleading absent the omitted information.

12       154.   Seal Skin's misrepresentations and nondisclosures deceive and have a tendency

13  to deceive the general public.

14       155.   Seal Skin's misrepresentations and nondisclosures are material, in that a

15  reasonable person would attach importance to the information and would be induced to act on

16  the information in making purchase decisions.

17       156.   As a direct and proximate result of Seal Skin's violations of the UCL, Plaintiff

18  and Class members were harmed, suffered injury-in-fact, and lost money or property.

19       157.   Plaintiff and Class members reasonably relied on Seal Skin's material

20  misrepresentations, and would not have purchased Seal Skin's Products at the prices that they

21  paid had they known the truth.

22       158.   Plaintiff and Class members did not receive the benefits of their bargain.

23  Plaintiff and Class members did not enjoy the actual discounts that Seal Skin represented and

24  promised to them. Plaintiff and Class members did not receive Products that were worth the

25  inflated amount that Seal Skin represented to them; the Products did not regularly sell for, and

26  were not actually worth, the fictitious reference price advertised by Seal Skin.

27       159.   By its conduct and omissions alleged herein, Seal Skin caused the demand for its

28  Products to be artificially increased and caused all customers, including Plaintiff and Class

members, to pay price premiums to Seal Skin. Put differently, as a result of its misrepresentations, Seal Skin has been able to charge a price premium for its Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Seal Skin would have had to charge less for its Products in order to enjoy the same level of demand.

160. By its conduct and omissions alleged herein, Seal Skin received more money from Plaintiff and Class members than it should have received. Seal Skin should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

161. Seal Skin's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Seal Skin's conduct is oppressive and substantially injurious to consumers. There is no utility to Seal Skin's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Seal Skin's conduct alleged herein.

162. Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

163. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the UCL to protect the general public from Seal Skin's false advertisements, misrepresentations, and omissions.

164. Seal Skin's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Seal Skin absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Seal Skin from committing the unlawful practices alleged herein.

165. The balance of the equities favors the entry of permanent public injunctive relief against Seal Skin. Plaintiff, the members of the Class, honest competing businesses, and the

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

general public will be irreparably harmed from Seal Skin's ongoing false advertising absent the entry of permanent public injunctive relief against Seal Skin.

166.    Plaintiff lacks an adequate remedy at law to prevent Seal Skin from engaging in the unlawful practices alleged herein, as stated in Count I above.

167.    Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.

## **PRAYER FOR RELIEF**

Plaintiff Joanne Cattani, on behalf of herself and the proposed Class, requests that the Court order relief and enter judgment against Seal Skin as follows:

1.    Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2.    Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period back to the date Seal Skin first engaged in the unlawful conduct alleged herein;

3.    Declare that Seal Skin's conduct alleged herein violates the CLRA, FAL, and UCL;

4.    Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Seal Skin obtained, directly or indirectly, from Plaintiff and Class members as a result of the unlawful conduct alleged herein;

5.    Permanently enjoin Seal Skin from engaging in the unlawful conduct alleged herein;

6.    Order that Seal Skin maintain the following records for at least two years for each daily Product offering on its retail website from the date of each advertisement and/or offer for sale of the Product, for auditing purposes to ensure compliance with the ordered public injunctive relief: (1) the advertised reference price for each Product; (2) the offer price and/or net selling price of each Product; and (3) any discount that was advertised and/or applicable to each Product;

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

7.      Retain jurisdiction to monitor Seal Skin's compliance with the permanent public injunctive relief requested hereinabove;

8.      Order Seal Skin to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

9.      Grant such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Date: December 14, 2025.

Presented by:

HATTIS LUKACS & CORRINGTON

By: _____
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
Email: dan@hattislaw.com
Email : pkl@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff*
*and the Proposed Class*

CLASS ACTION COMPLAINT

- 35 -